**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WALL TOWNSHIP BOARD OF EDUCATION, | CIVIL ACTION NO. 07-3904 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
|  | **FILED: JANUARY 30, 2008** |
| v. |  |
| C.M., |  |
| Defendant. |  |

**COOPER, District Judge**

**APPEARANCES**

James F. Schwerin
Parker McCay, PA, Lawrenceville, New Jersey
Attorney for Plaintiff

David R. Giles
South Orange, New Jersey, &
Ruth Ann Lowenkron
Education Law Center, Newark, New Jersey
Attorneys for Defendant

### INTRODUCTION

Plaintiff, the Wall Township Board of Education (the "Board"), is the governing body of the Wall Township School District. (Compl., at ¶ 2.) The Board commenced this action to appeal from an administrative law judge decision and order, which, <u>inter alia</u>, directed the Board to immediately pay for an independent learning evaluation requested by defendant, C.M., on behalf of her son, D.M., a student in the Wall Township School District. (<u>See generally</u> Compl.; Def. Br., Ex. A, 5-9-07 ALJ

Decision & Order.)  C.M. moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) because the Board failed to comply with the applicable statute of limitations set forth in the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq., ("IDEA").  (Dkt. entry no. 4.)  The Board opposes the motion.  (Dkt. entry no. 7.)  For the reasons stated herein, the Court will deny the motion without prejudice.

## BACKGROUND

D.M. attends an elementary school in Wall Township.  (Def. Br., Ex. A, 5-9-07 ALJ Decision & Ord., at 2.)  C.M. requested that a Child Study Team ("CST") evaluate D.M. and determine whether D.M. is entitled to special education services.  (Id. at 2-3.)  The CST assessed D.M.'s learning ability and speech language, and determined that he was not eligible for special education and related services.  (Id. at 3.)  C.M. then requested independent learning and speech evaluations for D.M.  (Id.)  The Board, on behalf of the school district, agreed to assist C.M. in obtaining such independent evaluations for D.M.  (Id.)  However, the Board did not approve the persons and agencies C.M. chose to perform the independent evaluations.  (See id. at 3-4.)  As a result, the Board filed a petition in the Office of Administrative Law ("OAL") on May 26, 2006, requesting a due

process hearing. (Id. at 4.)[1] The Deputy Director of the OAL and Administrative Law Judge Jeff Massin dismissed the Board's petition on sufficiency grounds. (Id.)

The Board filed another due process petition with the OAL on August 14, 2006. (Id.)[2] In this petition, the Board did not contest C.M.'s request for independent evaluations, but instead "sought a ruling which would limit the cost of such evaluations to 'customary' in the region and that the selected evaluators be 'qualified' and 'independent.'" (Id.) The parties cross-moved for summary decision in their favor. (Id. at 2.) However, the parties partially settled their dispute after a hearing held before Administrative Law Judge Ana C. Viscomi (the "ALJ") on

---

[1] Because the Board did not provide C.M. with information about the Board's criteria for independent educational evaluations or where an independent evaluation could be obtained, C.M. filed a request for a complaint investigation with the New Jersey Department of Education, Office for Special Education Programs. (Def. Br., at 2.) See 34 C.F.R. § 300.502(a)(2) (requiring a public agency to provide parents with such information upon request for an independent educational evaluation). However, the parties do not discuss the outcome of C.M.'s request for a complaint investigation and such request does not form the basis of this appeal.

[2] The Board also filed a due process petition on June 19, 2006, but later voluntarily withdrew that petition. (Id.)

3

September 13, 2006.  (Id.)³  Thus, the only remaining issue for the ALJ to address was whether the independent learning evaluation sought by C.M. must adhere to "district criteria" as to the location, qualifications, and cost of the independent evaluator.  (Id.)

The ALJ decided the petition on May 9, 2007.  (Id. at 1.) Nevertheless, the decision was not mailed to the parties until May 15, 2007.  (Id., at cover page.)  The ALJ noted that the Director of the Office of Special Education Programs ("OSEP"), United States Department of Education, sent an interpretive letter to a state department of education explaining:

> in order to ensure the parent's right to an independent evaluation, it is the parent, not the district, who has the right to choose which evaluator on the list will conduct the [independent educational evaluation]. . . . [W]hen enforcing the IEE criteria, the district must allow parents the opportunity to select an evaluator who is not on the list but who meets the criteria set up by the public agency.

(Id. at 6 (omission in original).)  The ALJ also noted that a district must set criteria regarding the location of an independent educational evaluation and the requisite qualifications of the examiner, and such criteria "must be the

---

³ Specifically, the parties agreed that (1) D.M.'s occupational therapy evaluation would be performed by the Wall Township School District, (2) C.M. would be interviewed as part of the occupational therapy evaluation, (3) the Board would provide C.M. with all raw data obtained as a result of the occupational therapy evaluation that was not copyrighted, and (4) Karen Kimberlin would perform D.M.'s speech-language independent evaluation.

4

same as the criteria that the public agency uses when it initiates an evaluation". (<u>Id.</u>)  34 C.F.R. § 300.502(e)(1).

    The ALJ explained that the Board did not file its first due process petition until nearly three months after C.M. requested the independent evaluations, but the New Jersey Administrative Code requires a district to request a due process hearing "[n]ot later than 20 calendar days after receipt of the parental request for independent evaluation". (Def. Br., Ex. A, 5-9-07 ALJ Decision & Order, at 6.)  N.J.A.C. § 6A:14-2.5(c)(2)(ii).  The ALJ concluded that the Board did not have either defined criteria applicable to independent educational evaluations, or a prepared list of names and addresses of acceptable evaluators. (Def. Br., Ex. A, 5-9-07 ALJ Decision & Order, at 7.)  <u>See</u> 34 C.F.R. § 300.502(a)(2) (noting that a public agency must provide a parent with such information upon request for an independent educational evaluation).  The ALJ also concluded that the Board should have provided C.M. with tangible cost criteria information as soon as she requested the independent evaluations, particularly because its Director of Special Services was sufficiently qualified to set reasonable cost criteria. (<u>Id.</u>)  Accordingly, the ALJ granted C.M.'s "motion for summary decision to require the school district to provide D.M. an independent learning evaluation" and denied the Board's cross motion for summary decision.  (<u>Id.</u> at

8.)  The ALJ directed C.M. to choose the evaluator, and ordered the Board to bear the costs of such evaluation.  (Id.)

The Board did not comply with the ALJ's decision and order, and thus, C.M. asked the OSEP to enforce the decision and order. (Def. Br., at 3).  On August 13, 2007, the OSEP notified the parties that it had determined that the Board had not complied with the ALJ's decision and order and that it intended to refer the matter to the New Jersey State Attorney General's Office ("AG's Office") unless the ALJ's decision and order was stayed. (Id.)  The Board did not request the stay.  (Id.)  Instead, the Board commenced this action on August 15, 2007, seeking to have this Court reverse the ALJ's decision and order.  (Id.)

## DISCUSSION

I. **Legal Standards**

   A. **Rule 12(b)(1)**

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1).  Fed.R.Civ.P. 12(b)(1). Such motion may be made at any time.  Iwanowa v. Ford Motor Co., 67 F.Supp.2d 424, 437-38 (D.N.J. 1999).  The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction.  Id. at 438.  Under this standard, the Court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a

6

certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr., 721 F.2d 68, 75 (3d Cir. 1983); Iwanowa, 67 F.Supp.2d at 438.

A defendant can also attack subject matter jurisdiction by factually challenging the jurisdictional allegations set forth in the complaint. Iwanowa, 67 F.Supp.2d at 438. Under this standard, "no presumptive truthfulness attaches to plaintiff's allegations and the existence of disputed material facts will not preclude the Court from evaluating for itself the merits of jurisdiction claims." Pashun v. Modero, No. 92-3620, 1993 U.S. Dist. LEXIS 7147, at *6 (D.N.J. May 26, 1993). The Court may consider affidavits, depositions, and testimony to resolve factual issues and is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Iwanowa, 67 F.Supp.2d at 438. The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed. Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (explaining that a defendant may factually attack subject matter jurisdiction before filing an answer); see Pashun, 1993 U.S. Dist. LEXIS 7147, at *6.

7

**B.     Overview of Relevant IDEA Provisions and Their
        Implementing Federal and State Regulations**

If a parent disagrees with an assessment or evaluation performed by his or her child's school district, the parent may request an independent educational evaluation of the child at the public's expense.  20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502(a)(1), (b)(1); see N.J.A.C. § 6A:14-2.5.  Upon receiving such a request, the school district must provide the parent with information about where an independent evaluation may be obtained and the applicable criteria an independent evaluator must satisfy.  34 C.F.R. § 300.502(a)(2); see N.J.A.C. § 6A:14-2.5.  Further, the school district must, without unnecessary delay, either (1) request a due process hearing to demonstrate that its evaluation of the child was appropriate, or (2) ensure that an independent evaluation is provided at public expense.  34 C.F.R. § 300.502(b)(2)(i)-(ii).  In New Jersey, a school district must request a due process hearing "[n]ot later than 20 calendar days after receipt of the parental request for the independent evaluation".  N.J.A.C. § 6A:14-2.5(c)(2)(ii).

A party aggrieved by the findings and decision made by a state or local educational agency in connection with an impartial due process hearing, may commence an action in any state or district court without regard to the amount in controversy.  20 U.S.C. § 1415(i)(2)(A); see 20 U.S.C. § 1415(f).  Such aggrieved party "shall have 90 days from the date of the decision of the

8

hearing officer to bring such an action, or, if the State has an explicit time limitation . . . in such time as the State law allows." 20 U.S.C. § 1415(i)(2)(B).

### C. Determining Whether a Statutory Provision is a Statute of Limitations or a Jurisdictional Bar

"Time limitations analogous to a statute of limitations are subject to equitable modifications such as tolling, which 'stops the running of the statute of limitations in light of established equitable considerations'". Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998); see DiCroce v. Norton, 218 Fed.Appx. 171, 173 (3d Cir. 2007) (stating that under Title VII, a complainant has 90 days to commence an action after receiving a right to sue letter, and such filing period is not jurisdictional but is a statute of limitations subject to waiver, estoppel, and equitable tolling); Ruehl v. Viacom, Inc., 500 F.3d 375, 384 (3d Cir. 2007) ("The ADEA's timely exhaustion requirement is a non-jurisdictional prerequisite that, like a statue of limitations, is subject to equitable tolling."). Such time limitations do not affect the Court's jurisdiction, but may be pled as an affirmative defense. See Smith v. D.C., 496 F.Supp.2d 125, 127 (D.D.C. 2007). However, certain statutory time limitations are considered jurisdictional, and thus, they cannot be modified and an action is barred if the plaintiff fails to adhere to such a limitation. Miller, 145 F.3d at 617-18. The Court, in determining whether a time limitation contained in a statutory

9

provision should be viewed as a statute of limitations or a jurisdictional bar, must consider the language of the statute, its legislative history, and the purpose underlying the statute. Id. at 618 (explaining that a court must ultimately determine Congressional intent).

Statutory time limitations are generally subject to a rebuttable presumption that equitable tolling applies. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990) (explaining that time requirements in actions between private litigants are usually subject to equitable tolling and the same rebuttable presumption of equitable tolling should also apply in suits involving the United States unless Congress provides otherwise). However, "taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" Bowles v. Russell, 127 S.Ct. 2360, 2363 (2007). Also, a time limitation set forth in a statute generally has "jurisdictional significance". Id. at 2364 (noting that court promulgated rules cannot contain jurisdictional time prescriptions because they are not created by Congress). Thus:

> the notion of "'subject-matter'" jurisdiction obviously extends to "'classes of cases . . . falling within a court's adjudicatory authority,'" but it is not less "jurisdictional" when Congress forbids federal courts from adjudicating an otherwise legitimate "class of cases" after a certain period has elapsed from final judgment.

Id. at 2365-66 (omission in original) (internal citations omitted).

## II. Legal Standards Applied Here

Section 1415(i)(2)(B) expressly states that an aggrieved party "shall have 90 days from the date of the decision of the hearing officer" to commence a civil action appealing that decision. Thus, according to the plain language of the statute, the 90-day time limitation begins to run on the date the administrative law judge or other hearing officer issues a decision. See United States v. Introcaso, 506 F.3d 260, 264-65 (3d Cir. 2007) (explaining that the plain language of the statute is the starting point in statutory interpretation, and "the text of the statute is the end of the matter" if the language is clear). In this case, the 90-day time limitation began to run on May 9, 2007, the date of the ALJ's decision and order. (Def. Br., Ex. A, 5-9-07 ALJ Decision & Order, at 1, 8.)

The Board commenced this action on August 15, 2007, a date 98 days after the ALJ issued the decision and order. (See Compl.)[4] Accordingly, C.M. argues that the Board's complaint should be dismissed pursuant to Rule 12(b)(1) because "the Complaint was filed beyond [the] IDEA's 90-day statute of limitations and this Court lacks jurisdiction over the claims

---

[4] The Court also notes that the Board commenced this action 92 days after the ALJ's decision and order was mailed to the parties on May 15, 2007.

11

asserted therein." (Def. Br., at 5.) The Court, however, finds that the 90-day time limitation set forth in Section 1415(i)(2)(B) is not a jurisdictional bar, but instead is a statute of limitations that may be pled as an affirmative defense.

Section 1415(i)(2)(B) requires an aggrieved party to commence a civil action appealing the decision of the hearing officer either within 90 days from the date of the decision or in such time as state law allows. Thus, although the 90-day time limitation has "jurisdictional significance" because it appears in a statute, such significance is undermined by the later part of the provision, which permits each state to disregard the 90-day time limit and create its own time prescription. See Bowles, 127 S.Ct. at 2364. Time prescriptions created by state laws cannot be jurisdictional because "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction". Id. Therefore, the Court concludes that by permitting the individual states to set forth the time limitation for an aggrieved party to appeal a decision made following an IDEA due process hearing, Congress intended for Section 1415(i)(2)(B) to be treated as a statute of limitations subject to waiver, estoppel, and equitable tolling. See R.G. v. Glen Ridge Bd. of Educ., No. 05-3017, 2005 U.S. Dist. LEXIS 30606, at *12 (D.N.J. Dec. 2, 2005) (noting that the IDEA, as amended, "establishes a 90-day statute of

limitations for bringing civil action"); but see W.K. v. Sea Isle City Bd. of Educ., No. 06-1815, 2007 U.S. Dist. LEXIS, at *8 (D.N.J. Feb. 5, 2007) (referring to "the jurisdictional limitation of [Section] 1415(i)(2)(B)" without further discussion).

The Court notes that several other factors support our conclusion that Congress did not intend for Section 1415(i)(2)(B) to be jurisdictional.  First, Section 1415(i)(2)(B) does not use the term "jurisdiction".  See Miller, 145 F.3d at 618 (concluding that the limitations provision under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") was not a jurisdictional bar, and noting that the provision does not use the term "jurisdiction").  Second, the 90-day time limitation is separate from the provision giving any party aggrieved by a decision resulting from an IDEA due process hearing the right to bring an action in district court.  See id. (emphasizing that the AEDPA affirmatively separates the time limit provision from the provision conferring jurisdiction).  20 U.S.C. § 1415(1)(2)(A). Moreover, the Seventh Circuit's conclusion in Farzana v. Indiana Department of Education, that a state-prescribed time limitation imposed pursuant to the IDEA was not jurisdictional, also supports our holding here.  473 F.3d 703, 705 (7th Cir. 2007).

In Farzana, the district court dismissed the plaintiff's appeal of an administrative decision rendered pursuant to the

13

IDEA because she failed, inter alia, to file the appeal within the 30 day time limitation prescribed by Indiana law. Id. at 704.[5] On appeal, the Seventh Circuit noted that there are many mandatory rules "in the sense that courts must enforce them punctiliously if a litigant insists", but such rules are not jurisdictional unless they limit a federal court's "adjudicatory competence." Id. at 705. Thus, the Seventh Circuit determined that "[f]ederal courts have been authorized to resolve disputes under the IDEA, so procedural hurdles – whether these concern timely filing or verification – are not 'jurisdictional.'" Id. We believe the Seventh Circuit's reasoning extends not only to limitations periods prescribed by state law, as permitted by Section 1415(i)(2)(B), but also to the alternative 90-day limitations period expressly set forth in that provision. The 90-day limitation is simply a procedural hurdle that does not affect this Court's adjudicatory competence. See id. Therefore, the 90-day time limitation is analogous to a statute of limitations, and thus, is subject to equitable modifications such as waiver, estoppel, and equitable tolling. See Miller, 145 F.3d at 617.[6]

---

[5] The parties agreed that the 90-day time limitation set forth in Section 1415(i)(2)(B) did not apply in light of the 30-day limitation set forth in Indiana Code § 4-21.5-5-5. Id.

[6] This Court did not uncover, and the parties did not point out, any references in the congressional record pertaining to Section 1415(i)(2)(B).

14

C.M.'s motion only requests that this Court dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  (Dkt. entry no. 4).  Therefore, we intend to deny the motion without prejudice to permit C.M. to move again under Rule 12(b)(6), if appropriate.  See Anjelino v. N.Y. Times Co., 200 F.3d 73, 87 (3d Cir. 1999) ("There is a fundamental difference between review under Rule 12(b)(1), where existence of disputed material facts will not preclude the court from evaluating the merits of the jurisdictional claim, and review under Rule 12(b)(6), where the court is required to accept as true all the allegations of the complaint and all inferences arising from them[.]" (internal citations omitted)).  Based on the arguments raised by the Board in its opposition to C.M.'s motion and by C.M. in the reply brief, a motion to dismiss pursuant to Rule 12(b)(6) should address, inter alia, whether equitable tolling applies under the circumstances here.  See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (stating that a party arguing that equitable tolling should apply bears the burden of proving that (1) such party has been pursuing his or her rights diligently, and (2) some extraordinary circumstance stood in the way).  Moreover, in addition to denying the motion without prejudice, the Court intends to direct the parties to contact the Magistrate Judge to schedule a conference to discuss the possibility of settlement.

**CONCLUSION**

The Court, for the reasons stated supra, will deny the motion without prejudice.  The Court will issue an appropriate order separately.

                                        s/ Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge

Dated: January 30, 2008